IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GARY O. GILPATRICK,

       Plaintiff,

     vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

       Defendant.

Civil No. 06-85-AS

OPINION AND ORDER

_____

Jason D. Hayward
Davis, Adams, Freudenberg, Day & Galli
600 N.W. Fifth Street
Grants Pass, OR 97526-2024
      Attorneys for claimant

Karin J. Immergut
United States Attorney
District of Oregon
Neil J. Evans
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

1 - FINDINGS AND RECOMMENDATION           [LB]

Johanna Vanderlee
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075
          Attorneys for defendant

ASHMANSKAS, Magistrate Judge:

Claimant, Gary Gilbert, brings this action pursuant to the Social Security Act (Act), 42 U.S.C. § 405(g), seeking judicial review of the Social Security Commissioner's (Commissioner) final decision.  The Commissioner denied Gilbert's claim for Disability Insurance Benefits (DIB).  For the reasons set forth below, the Commissioner's decision is affirmed.

## PROCEDURAL BACKGROUND

Gilpatrick filed his application for DIB July 18, 2002, with a protective filing date of May 16, 2002, alleging disability since August 1, 1997, due to hearing loss, arthritis, history of treatment for prostate cancer, Meniere's disease, Reynaud's disease, depression and anxiety.  Gilpatrick's application was denied initially and upon reconsideration.  On December 8, 2004, after a timely request for a hearing, Gilpatrick appeared and testified before an administrative law judge (ALJ).  Gilpatrick was represented by counsel, Gregory Day.  Beverly Gilpatrick, claimant's wife, and Lynn Jones, a vocational expert (VE), also appeared and testified.

On March 23, 2005, the ALJ issued a decision finding Gilpatrick not disabled, as defined in the Act.  Gilpatrick filed

2 - FINDINGS AND RECOMMENDATION                          [LB]

a request for review of the ALJ's decision.  On December 8, 2005,
the Appeals Council denied Gilpatrick's request for review of the
ALJ's decision, making the ALJ's decision the final decision of the
Commissioner.  See 20 C.F.R. §§ 404.981, 422.210.

### STATEMENT OF FACTS

The medical records submitted in this case accurately set
forth Gilpatrick's medical history as it relates to his claim for
benefits.  The court has carefully reviewed the medical records
submitted here, and the parties are familiar with the records.  In
addition, the Commissioner stipulates to the ALJ's summary of the
medical and testimonial evidence.  Accordingly, the details of
those medical records will not be recounted here.

Gilpatrick was 54 years old at the time of the hearing; had
completed two years of college; and had past relevant work
experience as a machinist and a community college instructor of
machinist occupations.  Gilpatrick alleged disability since August
1, 1997, due to hearing loss, arthritis, history of treatment for
prostate cancer, Meniere's disease, Reynaud's disease, depression
and anxiety.  Gilpatrick had not engaged in substantial gainful
activity since December 1997, shortly after the onset date of
disability.

At the 2004 hearing, Gilpatrick testified on his own behalf.
Gilpatrick testified regarding his past work experiences, including
owning and operating a machine shop; his mental and physical

limitations; his medications and the side effects; and his daily activities. Gilpatrick's wife, Beverly, testified regarding her observations of the impact of her husband's mental and physical conditions.

The VE testified that Gilpatrick's past relevant work was as a machinist (medium, heavy as he performed it, SVP 7, skilled) and as a community college instructor of machinist occupations (skilled, SVP 8, light). Based on the ALJ's hypothetical, the VE opined that Gilpatrick would not have the residual functional capacity (RFC) to return to his past relevant work as a machinist or college instructor, but could perform other work such as a table worker, garment sorter and parking lot cashier.

The ALJ found that Gilpatrick was insured for benefits through March 31, 1998; Gilpatrick engaged in substantial gainful activity through December 1997, but not thereafter; Gilpatrick's medically determinable impairments as of March 31, 1998, included his history of back surgery for ruptured disc at L4-5 in 1985, Meniere's disease, Reynaud's disease and a high frequency hearing loss; the medical evidence established that his ability to work was limited by a combination of impairments, but he did not have an impairment or combination of impairments which meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4; Gilpatrick's statements regarding his impairments and their impact on his ability to work was not sufficiently credible to

establish disability as of the expiration of his disability insured status; he did not retain the RFC to perform substantial gainful activity in his past relevant work as a machinist or instructor of machinist occupations; Gilpatrick was a "younger individual between the ages of 45 and 49" during the relevant period; he had two years of college education, but his skills were not transferable; and, he retained the RFC to perform a significant range of light work since his onset date. Accordingly, the ALJ found that Gilpatrick was not disabled under the Act and not entitled to DIB.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id.

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; the court may not substitute its judgment for

that of the Commissioner's.  <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1156 (9th Cir. 2001)

To be found disabled under the Act, an individual must have a medically determinable physical or mental impairment of such severity that he or she is not only unable to do his or her previous work but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  <u>See</u> 20 C.F.R. §§ 404.1520, 416.920.

The initial burden of proof rests upon the claimant to establish disability.  <u>Howard v. Heckler</u>, 782 F.2d 1484, 1486 (9th Cir. 1986).  To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. § 423(d)(1)(A).

The Secretary has established a five-step sequential process for determining whether a person is disabled.  <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502, 416.920.  First the Secretary determines whether a claimant is engaged in "substantial gainful activity."  If so, the claimant is not disabled.  <u>Yuckert</u>, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

In step two the Secretary determines whether the claimant has a "medically severe impairment or combination of impairments." <u>Yuckert</u>, 482 U.S. at 140-41; <u>see</u> 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three the Secretary determines whether the impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." <u>Id</u>.; <u>see</u> 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Secretary proceeds to step four. <u>Yuckert</u>, 482 U.S. at 141.

In step four the Secretary determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, she is not disabled. If she cannot perform past relevant work, the burden shifts to the Secretary. In step five, the Secretary must establish that the claimant can perform other work in the national economy. <u>Yuckert</u>, 482 U.S. at 141-42; <u>see</u> 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Secretary meets this burden, then claimant is deemed not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## DISCUSSION

Gilpatrick contends that the decision of the ALJ was not based on substantial evidence as required by 42 U.S.C. § 405(g), and the

ALJ erred as a matter of law in denying his claim.[1]  Specifically, Gilpatrick argues that the Commissioner erred by:  (1) failing to afford sufficient weight to the opinion of his treating physicians, Drs. Roger Steinbrenner and Kenneth Haugen; (2) disregarding the Veterans' Administration's rating decision; (3) failing to consider the combined effect of his impairments, including his mental impairments and difficulties with incontinence; and (4) applying the Medical-Vocational Guidelines mechanically, without regard for Gilpatrick's individual circumstances.  The court has considered these challenges to the Commissioner's decision and, based on the grounds set forth below, has determined that there is  substantial evidence in the record to support the Commissioner's finding that Gilpatrick was not disabled.

## I.    Testimony of Treating Physicians

Gilpatrick contends the ALJ erred when the ALJ failed to afford sufficient weight to the opinions of his treating physicians, Drs. Steinbrenner and Haugen.  Specifically, in a letter presented at the hearing, dated December 6, 2004, Dr. Steinbrenner stated that the physical and mental limitations affecting Gilpatrick at the time of the hearing were also present prior to March 31, 1998, Gilpatrick's date of last insured.  In addition, the record includes a report dated, May 11, 2000, from

---

[1]    Gilpatrick does not challenge the ALJ's finding that he was insured for DIB only through March 31, 1998, and, therefore, must establish disability on or prior to that date.

Dr. Haugen stating that Gilpatrick's "pertinent history dates back a few years" and "[a]ll of his complaints are long-term chronic problems."

The weight attributable to the opinion of a medical source depends, in part, on the relationship between the physician and the claimant. Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than that of a physician who did not examine the claimant but formed an opinion based on a review of the claimant's medical records. Holohan v. Massanari, 246 F.3d 1195, 1201-1202 (9th Cir. 2001).

The ALJ can reject a treating or examining physician's opinion that is inconsistent with the opinions of other treating or examining physicians, if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). An uncontradicted opinion may be rejected only for clear and convincing reasons. Thomas, 278 F.3d at 956-957.

The opinion of a non-examining physician by itself does not constitute substantial evidence to reject the opinion of a treating or examining physician. Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996). It may constitute substantial evidence if it is

consistent with other evidence in the record.  Magallanes v. Bowen, 881 F.2d 747, 752 (9th Cir. 1989).

The Commissioner argues that Dr. Steinbrenner's December 6, 2004, opinion was inconsistent with his 1997 and 1998 opinions that Gilpatrick was asymptomatic and functioning well during the relevant period of August 1, 1997, through March 31, 1998.  In addition, the Commissioner maintains that Dr. Steinbrenner's December 2004 opinion is also contradicted by Gilpatrick's testimony.  As such, the Commissioner contends that the ALJ must give only specific and legitimate reasons to reject the December 2004 opinion.  Gilpatrick does not dispute this contention.  Accordingly, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Steinbrenner's December 2004 opinion that Gilpatrick's functioning prior to March 1998, was in accordance with the functioning capacity of Gilpatrick in 2003 as set forth by Drs. Kristin Miller and Grant Rawlins.

In rejecting Dr. Gilpatrick's December 2004 opinion, the ALJ stated:

> Under our rules, significant weight ordinarily will be accorded the opinion of a treating physician, but only if his findings are supported by objective clinical data and consistent with the record generally.  Unfortunately, in this case Dr. Steinbrenner's opinion, that the physical and mental limitations that affect Mr. Gilpatrick currently also were present before the end of March 1998, is *not even marginally supported by the record*.  Not only do the physician's chart notes indicate no significant acute medical problems during the period in question, they contain multiple affirmative statements by both the provider and patient indicating that the claimant was doing well.  He endorsed Dr. Miller's opinion

that the claimant's current standing and walking capacity was
a maximum of no more [than] three hours a day, and applied it
to the claimant's status as of March 1998. . . .  However, it
is unlikely that a person so affected would have been able to
go hunting, which the claimant did even after the expiration
of his disability insured status [].

Similarly, Dr. Steinbrenner stated that the claimant's current
inability to handle the mental demands of any sustained work
activity, as found by Dr. Rollins in June 2003, also was
applicable to his condition in March 1998[,] and earlier.
Again, the acute emotional distress noted by Dr. Rollins
currently, is not reflected in Dr. Steinbrenner's chart notes
during the period under review.  As noted above, the claimant
specifically denied any mental problems, although his wife
described him as "grumpy."  *Indeed, from the claimant's
alleged disability onset date in August 1997[,] through the
expiration of his disability insured status in March 1998, Dr.
Steinbrenner's records make no reference to depression or any
other emotional disturbance.*  Based on Mrs. Gilpatrick's
reference to her husband's irritability Dr. Steinbrenner
reviewed the patient's medications, but did not adjust the
claimant's Prozac dosage.  This review occurred on October 9,
1998, more than six months after the expiration of disability
insured status. . . .  Accordingly, for the reasons stated
above, Dr. Steinbrenner's opinions are accorded only limited
weight.

(Emphasis added).

The court is satisfied that the ALJ properly set forth reasons
for rejecting Dr. Steinbrenner's December 2004 opinion.  The record
reveals that Gilpatrick was treated by Dr. Steinbrenner from
December 27, 1994, through June 27, 2002.  Between August 1, 1997,
(onset date) and March 31, 1998, (date of last insured), Dr.
Steinbrenner examined Gilpatrick one time on November 5, 1997.  Dr.
Steinbrenner's notes from that visit state:   "The patient's
asymptomatic, doing well. . . .  The patient's having no particular

symptoms.  He is not having any side effects from his medication. He has no headaches."

In the time period preceding the onset date, Dr. Steinbrenner examined Gilpatrick on April 14, 1997, and reported, in part, that:

> The patient is in today at the request of his wife who feels he is depressed.  He does have early morning awakening.  He does not feel particularly depressed but has a history of panic disorder, agoraphobia, anxiety for which he takes Ativan once day . . . with fairly good affect. . . .  He denies any unusual stressful situations, feels he is in good position with his life and financially.

On May 21, 1997, Dr. Steinbrenner reported that Gilpatrick was "[a]symptomatic," but did note elevated PSA and order a repeat PSA in six months.  The next entry by Dr. Steinbrenner regarding Gilpatrick's PSA levels was on October 7, 1998, when Dr. Steinbrenner noted "mildly elevated PSA last visit."

Similarly, in the time period proceeding the date of late insured, Dr. Steinbrenner examined Gilpatrick on April 28, 1998, and reported, in part, that:

> The patient is doing relatively well but is having more Reynaud's involvement of his finger of the right hand.  Note that he was changed from Procardia XL60 to Norvasc at the request of his insurance company.  He is requesting a change back to Procardia as he feels he was better on that medication.  Note that his blood pressure has also been more elevated since starting on the Norvasc.  Lab was obtained and is reviewed with the patient.  Cholesterol, triglycerides are improved actually with increasing HDLs and lower LDLs.  He is having no chest pain, dyspnea, orthopnea.

Dr. Steinbrenner ordered that Gilpatrick go back to Procardia XL60 and asked Gilpatrick to return in six months.

Upon return six months later on October 7, 1998, Dr. Steinbrenner noted that "[t]he patient is essentially asymptomatic." Gilpatrick reported that he felt well and had no specific complaints. Moreover, Dr. Steinbrenner recorded that on weekends, Gilpatrick "usually leaves and goes hunting so he is out of the house away with his dogs."

The court is satisfied that the ALJ gave specific and legitimate reasons, supported by the record, for disregarding Dr. Steinbrenner's December 2004 opinion, two and a half years after his last examination of Gilpatrick, that Drs. Miller's and Rawlins' 2003 opinions accurately set forth Gilpatrick's ability to do work-related activities during the period immediately preceding March 31, 1998. The ALJ can support his findings "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

Next, the ALJ's opinion does not reference the statements from Dr. Haugen's notes that are relied upon by Gilpatrick here to establish disability during the relevant period. The court finds, however, that the ALJ was not required to consider these statements in reaching his conclusion that Gilpatrick was not disabled during the relevant time period. Dr. Haugen was neither a treating or examining physician during the relevant time period. Rather, Gilpatrick was referred to Dr. Haugen for a discussion of

postoperative radiation therapy. Dr. Haugen first examined Gilpatrick in May 2000, over two years after the date of last insured.

Moreover, the two statements relied upon by Gilpatrick do not provide evidence of disability prior to March 31, 1998. The first statement, "his pertinent history dates back a few years," was lifted from the routine history taken by Dr. Haugen and appears to address the symptoms related to Gilpatrick's PSA levels. In its entirety the statement by Dr. Haugen was "His pertinent history dates back a few years since he has been having his PSA followed." The second statement relied up by Gilpatrick, "[a]ll of his complaints are long-term chronic problems[,]" was in consideration of Gilpatrick's complaints as they related to his prostate cancer. In context, the second statement was "Constitutionally he has general aches and pains and several different bothersome things but none worrisome for spread of cancer." Dr. Haugen was offering neither an opinion nor a conclusion regarding Gilpatrick's RFC during the relevant time period. Nor do his statements provide evidence of disability prior to March 31, 1998. As such, the ALJ was not required to consider expressly the statements in his written decision.

## II. Veterans' Administration's Rating

Gilpatrick also challenges the ALJ's failure to consider the Veterans' Administration's (hereinafter VA) rating decision. On

14 - FINDINGS AND RECOMMENDATION                                [LB]

May 21, 2003, the VA issued a 40% disability rating due to Gilpatrick's cancer, which was diagnosed initially in April 1999.

Social Security Rulings 96-2p and 96-5p require an ALJ to carefully consider all medical evidence that bears on the decision of a claimant's disability determination. Moreover, "an ALJ must ordinarily give great weight to a VA determination of disability," and may only "give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002).

While the ALJ did not reference the VA rating in his written decision, the ALJ did include the VA documents in the administrative record, including the VA rating determination itself. As such, the documents were considered as part of the record upon which the ALJ's decision was based. The ALJ is not required to address each   piece of medical evidence in his opinion. See, e.g., Vincent v. Heckler, 739 F.2d 1393, 1394 (9th Cir. 1984)(Secretary is required to explain only why "significant probative evidence has been rejected." (quotation and citation omitted)).

Moreover, neither the VA rating nor the impairment it was based on was present during the relevant time period. Based on the record, Gilpatrick's prostate cancer diagnosis was made in April 1999. In fact, the medical record includes a hand written note

from Dr. Steinbrenner on March 31, 1999, that states "PSA ↑ from 6.6 4/15/98 to 10.5 ref to Dr. Moos."  Dr. Mitchell Moos diagnosed Gilpatrick with prostate cancer in April 1999, one month later and one year after Gilpatrick's date of last insured.  The ALJ's decision not to reference the VA rating in his written opinion was not in error.

### III. Combined Effect of Impairments

Gilpatrick next argues that the ALJ failed to consider his "back pain, psychological problems, and Meniere's disease" in combination with his other impairments in determining his residual functional capacity.  According to Gilpatrick, his various physical and mental impairments "have all existed for quite some time, and the evidence demonstrates that he was having problems with each of those prior to his date last insured."  Gilpatrick charges that the ALJ committed a legal error when he failed to assess what effect his mental and physical impairments had in combination and whether that combination of impairments met the listings, physical or mental.  See Lester, 81 F.3d at 829 (ALJ erred by "isolating the effects of Lester's physical impairments from the effects of his mental impairment.").

"In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under [the Act], the Commissioner of Social Security shall consider

the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(b). The ALJ must evaluate the combined effect of any impairments when determining not only the severity of a claimant's impairments, but also when determining the claimant's RFC to work. See Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (holding "at the step two inquiry" the ALJ "must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe").

Gilpatrick's contention that the ALJ failed to consider the combined effect of his impairments is unfounded. A review of the transcript of the hearing and the text of his written decision confirm that the ALJ considered all of Gilpatrick's impairments that were documented as of March 31, 1998. The ALJ stated, in part, that:

> The record shows that, as of the date when the claimant last met the disability insured status requirements of the Act on March 31, 1998, his medically determinable impairments included his history of back surgery for ruptured disc at L4-5 in 1985, the Meniere's disease, Reynaud's and a high frequency hearing loss. While collectively "severe" within the meaning of the Regulations the above conditions do not meet or medically equal, either singly or in combination to one of the impairments listed in Appendix 1, Supbart P, Regulations No. 4.

> . . . .

> The record shows that the claimant has a subsequent history of prostatic adenocarcinoma status post radical prostatectomy in September 1999, status post radiation treatment in July 2000,

major depression, panic disorder with agoraphobia, established
by evaluation in June 2003, and a right shoulder impingement
or bursitis.  These conditions are regarded as being nonsevere
as of the date the claimant last met the disability insured
status requirements of the Act on March 31, 1998.

Moreover, the fact that the ALJ moved sequentially, first
physical then mental, through the impairments during his evaluation
of the evidence is not evidence that he isolated them.  Rather it
was but one method of analysis.  The ALJ's decision repeatedly
states that his findings were based on an evaluation of
Gilpatrick's combined impairments.  Thus, in light of the ALJ's
express specific and repeated reference to having considered
Gilpatrick's impairments in combination, and the ALJ's thorough
discussion of the medical evidence and Gilpatrick's daily
activities, the Court finds that the ALJ properly evaluated the
combined effects of Gilpatrick's impairments.

Nor does Gilpatrick assist the court by setting forth the
documented medical impairments that were overlooked by the ALJ, the
impact of those combined impairments or how the impairments
combined to equal a listing impairment.  See, e.g., Burch v.
Barnhart, 400 F.3d 676, 683 (9th Cir. 2005) ("An ALJ is not required
to discuss the combined effects of a claimant's impairments or
compare them to any listing in an equivalency determination, unless
the claimant presents evidence in an effort to establish
equivalence.")  The ALJ determined that the combined effect of
Gilpatrick's enumerated impairments left him unable to resume his

past relevant work but that he could perform other work, with restrictions, as set forth in his written decision.

## IV.  Application of Guidelines

Finally, Gilpatrick contends that a borderline age situation exists and that the Medical-Vocational Guidelines should not apply mechanically to direct a finding of not disabled prior to his 50th birthday.  Gilpatrick argues that despite being 46 years old at onset of disability "he was losing his business, undergoing extensive treatment for prostate problems, and was suffering from depression, while looking forward to surgery and chemotherapy over the next year."  See 20 C.F.R. § 404.1563(a)(age as a vocational factor)  Gilpatrick maintains that under these circumstances it would be more reasonable to consider his capacity for occupational adjustment or retraining to be limited and in accordance with that of individuals age 50 or older.

Section 404.1563(b) states, in part, that:

When we make a finding about your ability to do other work under § 404.1520(f)(1), we will use the age categories in paragraphs (c) through (e) of this section.  We will use each of the age categories that applies to you during the period for which we must determine if you are disabled.  We will not apply the age categories mechanically in a borderline situation.  If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

20 CFR § 404.1563(b).

In addition, Social Security Regulation 83-10 provides, in part, that:

> The regulations provide that older age is an increasingly adverse vocational factor for persons with severe impairments. The chronological ages 45, 50, 55 and 60 may be critical to a decision.  However, the regulations also provide that age categories are not applied mechanically in borderline situations.  For example, a rule for an individual of advanced age (55 or older) could be found applicable, in some circumstances, to an individual whose chronological age is 54 years and 11 months (closely approaching advanced age).  No fixed guidelines as to when a borderline situation exists are provided since such guidelines would themselves reflect a mechanical approach.
>
> *Under title II, a period of disability cannot begin after a worker's disability insured status has expired.  When the person last met the insured status requirement before the date of adjudication, the oldest age to be considered is the person's age at the date last insured.  In these situations, the person's age at the time of decisionmaking is immaterial.*

Social Security Regulation 83-10 (emphasis added).

Gilpatrick was 47 years old on March 31, 1998.  There is simply no authority in the Medical-Vocational Guidelines for the ALJ to consider Gilpatrick as a 50 year-old individual to aid in the determination of whether he was disabled under the Act.  The ALJ's decision not to consider Gilpatrick as an individual "closely approaching advanced age" was not an instance of mechanical application, rather it was mandated by the rules.

Moreover, if a claimant has functional limitations or work restrictions which prevent him from performing the full range of work at a given level of exertion, the Medical-Vocational Guidelines cannot be used in step five to determine whether he is

20 - FINDINGS AND RECOMMENDATION                              [LB]

disabled.   Instead, the ALJ must elicit testimony from a VE to determine whether jobs exist in the national economy that the claimant can perform despite his limitations and restrictions.   To elicit meaningful testimony from the VE, the ALJ must pose a hypothetical question that accurately reflects all of the claimant's functional limitations and work restrictions.   Tacket v. Apfel, 180 F.3d 1094, 1103-1104 (9th Cir. 1999).

In this case, the ALJ elicited testimony from the VE, Jones, by posing a hypothetical question that included all of Gilpatrick's restrictions and limitations.   Neither the ALJ's hypothetical question nor the VE's testimony is challenged by Gilpatrick and, therefore, the ALJ properly relied upon the Jones' conclusion that Gilpatrick could perform other work.

**CONCLUSION**

Based on the foregoing, there is substantial evidence in the record to support the Commissioner's finding that Gilpatrick was not disabled, as defined by the Act, prior to March 31, 1998, and, therefore, the decision of the Commissioner is AFFIRMED. Accordingly, Gilpatrick's complaint (doc. #1) is DISMISSED and all other motions are DENIED as moot.

IT IS SO ORDERED

Dated this  21  day of March 2007.


   /s/Donald C. Ashmanskas   
         Donald C. Ashmanskas
         United States Magistrate Judge